UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED CENTRAL BANK, a Texas banking corporation, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. 10-CV-4895<br>) |
| MINA BUILDERS INCORPORATED, an Illinois corporation;<br>SHAH N. AKHTAR; and<br>EXPERT CONSTRUCTION & REMODELERS, INC, an Illinois corporation, | ) Judge John W. Darrah<br>)<br>)<br>)<br>) |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff United Central Bank filed a Complaint on August 4, 2010, seeking to foreclose a mortgage, recover on a breach of promissory note, and enforce a guaranty against Mina Builders, Inc. and Shah N. Akhtar ("Defendants").[1] Plaintiff has filed a Second Motion for Summary Judgment after Plaintiff's first Motion for Summary Judgment was denied without prejudice to permit Defendants limited discovery. Plaintiff's Second Motion for Summary Judgment on all three counts is currently before the Court. For the reasons set forth below, the Second Motion for Summary Judgment is granted.

---

[1] A third defendant, Expert Construction & Remodelers, Inc., was also named in the Complaint but has since had a default judgment entered against it.

## BACKGROUND

After Plaintiff filed its initial Complaint, Defendant Akhtar appeared *pro se* and filed a letter, responding to the Complaint. On September 22, 2010, Plaintiff filed a First Amended Complaint and Akhtar, still proceeding *pro se*, filed a "Motion-Appeal/Request to Stop Action" and a "Complaint-Counter Law Suit." Plaintiff responded with a motion to dismiss Akhtar's counterclaim or, in the alternative, for a more definite statement. Attorney Edwin T. Gania then appeared on behalf of Defendants at a hearing on October 14, 2010; the Court struck all papers previously filed by Akhtar and deemed Plaintiff's Motion to Dismiss moot. On November 12, 2010, Defendants filed their Answer and Affirmative Defenses, alleging two defenses: (1) "Plaintiff's Non-Performance," which alleged Plaintiff breached an agreement and withheld funds due to Defendants that were necessary to complete the home construction project at issue in this case; and (2) "Negligent Misrepresentation," alleging false representation that the property at issue was zoned for construction of the desired project. (Docket No. 29, at pp. 4-5.)

In response to Defendants' Answer and Affirmative Defenses, Plaintiff moved, on December 9, 2010, to strike and dismiss both affirmative defenses under the premise that they should have been pled as counterclaims and that Defendants failed to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6). A briefing schedule was set for this Motion to Strike or Dismiss. Defendants failed to file a response to the Motion but, instead, informed the Court their affirmative defenses would be withdrawn with prejudice. Plaintiff then withdrew its Motion to Dismiss and filed a Motion for Summary Judgment on March 3, 2011, in accordance with the briefing

schedule set by the Court. On March 14, 2011, three days before Defendants' response to the summary judgment motion was due, Attorney Maurice J. Salem appeared on behalf of Defendants and filed a "Motion for Substitute [*sic*] of Counsel, to Stay Plaintiff's Pending Motion for Summary Judgment and for Leave to File Compulsory Counterclaims." The compulsory counterclaims Defendants sought to file were for breach of contract and for negligent representation, counterclaims essentially identical to the affirmative defenses Defendants previously withdrew with prejudice. Defendants were denied leave to file these counterclaims as they had already been withdrawn by the Defendants with prejudice.

Plaintiff's First Motion for Summary Judgment was filed on April 13, 2011; and response and reply briefs followed this Motion. However, the Court denied this first Motion for Summary Judgment without prejudice on July 12, 2011, to permit Defendants to conduct third-party discovery to determine what Defendants believed was the true amount owed to the Plaintiff. After this discovery was permitted, Plaintiff filed a Second Motion for Summary Judgment on September 27, 2011; this Motion is presently before the Court.

Local Rule 56.1(a)(3) requires the party moving for summary judgment to provide "a statement of material facts as to which the moving party contends there is no genuine issue." Rule 56.1(b)(3) then requires the nonmoving party to admit or deny each factual statement proffered by the moving party and to concisely designate any material facts that establish a genuine dispute for trial. *See Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005). A litigant's failure to dispute the facts set forth in its

opponent's statement in the manner dictated by Local Rule 56.1 results in those facts' being deemed admitted for purposes of summary judgment. *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003).

Local Rule 56.1(b)(3)(C) permits additional material facts to be provided by the nonmoving party. Local Rule 56.1(a)(3) then allows the moving party to submit a concise reply to these additional facts. To the extent that a response to a statement of material fact provides only extraneous or argumentative information, this will not constitute a proper denial of the fact, and the fact will be admitted. *See Graziana v. Village of Oak Park*, 401 F. Supp. 2d 918, 937 (N.D. Ill. 2005) (*Graziana*).

The following is taken from the parties' statements of undisputed material facts submitted in accordance with Local Rule 56.1. Plaintiff is a Texas banking corporation. Pl. 56.1(a)(3) ¶ 1. Defendant Mina Builders Incorporated ("Mina") is an Illinois corporation whose principal place of business is 118 Somerset Lane, Bolingbrook, Illinois. *Id.* ¶ 2. Defendant Akhtar is an Illinois resident, who also resides at that Bolingbrook address. *Id.* ¶ 3. The amount in controversy, without interests and costs, exceeds $75,000. *Id.* ¶ 4. The property at issue is within the Northern District of Illinois, and a substantial part of the events or omission giving rise to the claims occurred in this District. *Id.* ¶ 5. On or about August 28, 2006, Mutual Bank made a loan (the "Loan") to Mina for the purposes of acquiring the real estate and the constructing of a single-family

home at the property commonly known as 5134 West Foster Avenue, Chicago, Illinois (the "Property"). *Id.* ¶¶ 6, 9.[2]

The loan is evidenced by a restated Promissory Note, dated February 28, 2009, in the original principal amount of $372,800 (the "Note"), that Mina executed in favor of Mutual Bank; Plaintiff is in possession of the original Note. *Id.* ¶¶ 7, 8. On August 28, 2006, Mina executed and delivered to Mutual Bank as mortgagee a mortgage (the "Mortgage") on the Property described on the Mortgage as:

> LOT 100 IN KINSEY'S JEFFERSON PARK AND FOREST GLEN SUBDIVISION OF PART OF SECTION 9, TOWNSHIP 40 NORTH, RANGE 13, EAST OF THE THIRD PRINCIPAL MERIDIAN IN COOK COUNTY, ILLINOIS.
>
> PIN: 13-09-220-040-0000

*Id.* ¶ 9. The Mortgage was recorded on October 2, 2006, against the Property with the Cook County Recorder of Deeds with the recording document number 0627502001. *Id.* ¶ 10. The Mortgage provides that the total principal amount secured at any one time will not exceed $372,800.00. *Id.* ¶ 11; *see* Def. Mot., Affidavit of John Rybicki, Ex. B., § 2. The Note requires the Borrowers to repay the principal sum of $372,800.00 plus interest from February 28, 2009, on the unpaid principal balance at a variable interest rate tied to an index provided in the Wall Street Journal, provided the rate shall never be less than 8 percent per annum. *Id.* ¶ 12. The Note further requires Mina to pay Mutual Bank monthly payments of unpaid interest, commencing on March 28, 2009, and continuing on

---

[2] Defendants deny this statement but simply disagree to the amount of the loan at issue; to the extent Defendants' assertion is argumentative and provides no factual support disproving Plaintiff's statement, Defendants' response is disregarded, and the fact is admitted. *See Graziana*, 401 F.Supp.2d at 937.

the 28th day of each calendar month thereafter, with all unpaid principal, accrued interest, costs and expenses being due and payable on August 28, 2009, the maturity date. *Id.* ¶ 13. The Note provides that it shall be an "Event of Default" in the event Mina fails to make any payments when due under the Note. *Id.* ¶ 14. Mina failed to pay the monthly installment payments required under the Note, commencing on May 28, 2009, and for all the subsequent months thereafter, and failed to pay the amounts owing on the Note on the August 28, 2009 maturity date. *Id.* ¶ 15. While Defendants dispute this fact, Defendants provide no evidence that Defendants made timely monthly payments; instead, they argue about whether or not the entire loan was disbursed. Defendants' argumentative response is disregarded, and the fact is admitted.

On July 31, 2009, the Federal Deposit Insurance Corporation (the "FDIC") became receiver for Mutual Bank in accordance with Section 1821(c)(1) of the Federal Deposit Insurance Act, 12 U.S.C. § 1811 *et seq.*, and, as receiver for Mutual Bank, pursuant to its authority under the Federal Deposit Insurance Act, entered into a Purchase and Assumption Agreement of the same date with the Plaintiff (the "P&A Agreement"). *Id.* ¶ 16. Plaintiff became the owner and holder of the Mortgage, the Note, and indebtedness on July 31, 2009, and acquired all rights to enforce the terms thereof, by virtue of the P&A Agreement. *Id.* ¶ 17. This ownership was evidenced by the Assignment of the Promissory Note and by the Mortgage made by the FDIC to Plaintiff, effective July 31, 2009. *Id.* ¶ 17. The Note provides that a late charge equal to 5 percent of any unpaid monthly installment is due from Mina for each month such installment remains unpaid if the payment is not received within 10 days after the scheduled due date

and the Note provides that if there is a default under the note, including failure to pay upon final maturity, the interest rate shall be increased to 15 percent.[3] *Id.* ¶¶ 18-19. Section 21 of the Mortgage provides all rights of redemption are waived by Mina as mortgagor. *Id.* ¶ 21. The Note requires Mina to pay all attorney's fees and expenses incurred in connection with the collection of the indebtedness, including filing fees, and any other court costs, and Section 15 of the Mortgage provides that Mina must pay all expenses of collection, enforcement or protection of the mortgagee's rights and remedies under the Mortgage, including all costs and disbursements, such as reasonable attorney's fees, incurred to collect or enforce Mina's debt under the Mortgage. *Id.* ¶¶ 22-23. Akhtar executed a guaranty, (the "Guaranty"), dated August 9, 2006 by which he absolutely and unconditionally personally guaranteed Mina's full payment and performance of the loan. *Id.* ¶ 24. This Guaranty provides Akhtar must pay all expenses of collection, enforcement, or protection of the lender's rights and remedies under the Guaranty, including reasonable attorney's fees. *Id.* ¶ 26.

Plaintiff became the owner and holder of the Guaranty on July 31, 2009, by virtue of the P&A Agreement. *Id.* ¶ 27. This ownership was evidenced by the Assignment of Promissory Note and the Mortgage made by the FDIC to Plaintiff, effective July 31,

---

[3] Plaintiff asserts a full amount due and owed by the Defendants in Pl. 56.1(a)(3) ¶ 20 but fails to provide specific references to the affidavits, the record, or other supporting materials to support the facts set forth in that paragraph, as required under Local Rule 56.1(a)(3)(B); thus, the facts asserted in ¶ 20 are not admitted.

2009.[4] *Id.* ¶ 27. To date, and despite demand, Akhtar has failed and refused to make payment to Plaintiff pursuant to the Guaranty. *Id.* ¶ 28. The Note requires Mina to pay a fixed amount of money at a definite time, which was payable to Mutual Bank at the time it was issued, and does not state any other undertaking by Mina or Mutual Bank to take any action in addition to the payment of money. *Id.* ¶ 29. On or about August 28, 2006, Mutual Bank advanced the following Loan amounts on behalf of Mina in connection with its purchase of the Property: (1) $178,879.00 to Chicago Title to be used toward Mina's purchase of the Property; (2) $30,000.00 to be deposited into an interest reserve; (3) $621.40 for real estate taxes; (4) $350.00 for a Mutual Bank appraisal fee; (5) $500 for a Mutual Bank commitment fee; (6) $7,456.00 for a Mutual Bank loan fee; (7) $60.00 to Mutual Bank for a flood determination fee and (8) $50.00 for a Federal Express charge.[5] *Id.* ¶ 30. The outstanding principal balance of the Loan is $335,199.73, with total initial

---

[4] Defendants attempt to deny this fact by again arguing about Mutual Bank's failure to disburse the entire loan; an affirmative defense they withdrew with prejudice. Defendants are unable to properly support their claim that the Guaranty is void. Defendants' response to this fact is argumentative; their response is disregarded, and the fact is admitted.

[5] Defendants argue this calculation is inaccurate, claiming the amount of money disbursed to Defendants was $320,826.00 based on a disbursement record Defendants purport to be from Chicago Title Company. This statement, identified as Exhibit B of Defendants' Statements Pursuant to Local Rule 56.1(b)(3)(A) and (B), is unauthenticated. In ruling on a motion for summary judgment, a court may consider any evidence that may be admissible at trial. *See Woods v. City of Chicago*, 234 F.3d 979, 988 (N.D.Ill 2000). Since this document is unauthenticated, it would not be admissible at trial; and, thus, this document will not be considered in ruling on Plaintiff's Motion for Summary Judgment. Thus, Plaintiff's fact is admitted.

advances of $187,826.40 (which does not reflect the $30,000 interest reserve) and the balance advanced through November 5, 2009.[6] *Id.* ¶ 31.

## LEGAL STANDARD

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, based on the complete diversity of citizenship of the parties, and the matters in controversy exceed $75,000. Venue is also proper in this District because the Mortgage at issue is secured by a property located in this District and because a substantial part of the events and omissions giving rise to the claims occurred here. 28 U.S.C. § 1391(a)(2). Both the Promissory Note and Mortgage at issue provide that Illinois law governs any contractual dispute, and Defendants do not dispute this choice of law in their Response.

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying the evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). If the moving party meets this burden, the nonmoving party cannot rest on conclusory pleadings but "must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial." *Serfecz v. Jewel Food Stores*, 67 F.3d 591, 596 (7th Cir. 1995) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986)). A mere scintilla of evidence is not sufficient to oppose a

---

[6] *See supra* note 5.

motion for summary judgment, nor is a metaphysical doubt as to the material facts. *Robin v. Espo Eng. Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000) (citations omitted). Rather, the evidence must be such "that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (*Anderson*)).

In considering a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. *Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005) (citing *Anderson*, 477 U.S. at 255). The court does not make credibility determinations or weigh conflicting evidence. *Id.*

## ANALYSIS

Based on the analysis below, Plaintiff's Second Motion for Summary Judgment is granted in its entirety: Plaintiff is granted summary judgment as to Count I for Mortgage Foreclosure, Count II for Breach of the Promissory Note, and Count III for Breach of the Guaranty.

*Mortgage Foreclosure and Breach of Note*

No genuine issues of material facts remain in dispute regarding the Promissory Note and the Mortgage securing the Note. Mina executed the Mortgage, securing Mina's Promissory Note. The Promissory Note required Mina to make monthly installment payments, beginning on May 28, 2009, and for all subsequent months thereafter, and to pay all remaining unpaid principal, accrued interest, costs and expenses due at the Note's maturity date on August 28, 2009. Pl. 56.1(a)(3) ¶ 13. Mina failed to make these

payments as required by the Note. *Id.* ¶ 15. Defendants do not argue they actually made timely payments on the Note; rather, they continue to argue they failed to make timely payments because the Plaintiff did not disburse the full amount of the loan. The arguments regarding the bank's nonperformance were originally incorporated in Defendants' affirmative defenses, which they were permitted to file, but they withdrew with prejudice. The nonperformance argument was also denied from being entered as a counterclaim, on the same basis: they had already submitted the same argument in their affirmative defenses, which were withdrawn with prejudice. Because Defendants withdrew Mutual Bank's nonperformance as an affirmative defense, they are barred from bringing evidence of this nonperformance in their attempt to defeat Plaintiff's Motion for Summary Judgment. *See Carroll v. Acme-Cleveland Corp.*, 955 F.2d 1107, 114-115 (7th Cir. 1992) (affirming district court's decision to bar evidence of nonperformance of a contract when the nonperformance had not been raised as an affirmative defense). Defendants raise no factual issue showing Mina made timely payments under the terms of the Note, and Defendants are barred from asserting Mutual Bank's nonperformance as an affirmative defense.[7]

The Mortgage securing the Promissory Note entered into by Mina provides the Mortgagor (Mina) will be in default if "[m]ortgagor fails to make a payment in full when due." Def. Mot., Ex. 3-B, Mortgage, ¶ 13.A. The remedies provided in the Mortgage document clearly state that "[u]pon default, Lender will have the right, without declaring

---

[7] Even if this defense was permitted, the only support Defendants provide in their Response is an affidavit from Defendant Akhtar and an unauthenticated business record, allegedly from the Chicago Title Company. *See supra* note 5.

the whole indebtedness due and payable, to foreclose against all or any part of the Property and will have the right to possession provided by law." *Id.* ¶ 14. The Defendants are in default. As such, foreclosure of the Mortgage as asserted in Count I of the Amended Complaint is granted summary judgment, as no issue of fact remains.

Similarly, there is no doubt Mina is in breach under the terms of the Promissory Note. The Promissory Note entered into by Mina and Mutual Bank clearly defines an "Event of Default" as a situation where the "[b]orrower fails to make any payment when due under the Note." Def. Mot., Ex. 3-A, Promissory Note. "In an action with respect to a negotiable instrument, the plaintiff producing the instrument is entitled to payment if he proves the validity of the signatures on the instrument and entitlement to enforce the instrument." *Strosberg v. Brauvin Realty Services, Inc.*, 691 N.E.2d 834, 839 (Ill. App. Ct. 1998) (citing 810 ILCS 5/3-308). There is no dispute as to the signatures on the Promissory Note; Mina admits executing it, and Plaintiff has established its possession and rights to enforce the instrument. *See* Pl. 56.1(a)(3) ¶¶ 8, 17. Thus, Plaintiff is granted summary judgment as to Count II of the Amended Complaint; Defendant Mina has breached the terms of the Promissory Note.

*Akhtar's Guaranty*

Finally, Defendant Akhtar has breached the terms of the Guaranty he executed. "To prevail on a claim to enforce a guaranty, a plaintiff must 'enter proof of the original indebtedness, the debtor's default and the guarantee.'" *S.P. Richards Co. v. Business Supply Corp.*, No. 07 CV 1753, 2008 WL 4181729, at *3 (N.D.Ill. Sept. 5, 2008) (*S.P. Richards Co.*) (quoting *Mid-City Industrial Supply Co. v. Horowitz*, 476 N.E.2d 1271 (Ill.

App. Ct. 1985)). In the case at bar, there is proof of the original indebtedness, as Mina executed a Promissory Note, evidencing its indebtedness to Mutual Bank, Plaintiff's predecessor. Defendant Akhtar executed the Guaranty, which expressed his absolute and unconditional personal guarantee of Mina's obligations to the Plaintiff. Pl. 56.1(a)(3) ¶ 24. As discussed above, Mina failed to make the outstanding payments due under the Promissory Note and is in default. All three elements required to enforce a guaranty are present; thus, Plaintiff is permitted to enforce Akhtar's Guaranty. Summary judgment is granted on Count III of Plaintiff's Amended Complaint as Akhtar has breached the terms of the Guaranty.

## CONCLUSION

In light of the foregoing analysis, Plaintiff's Motion for Summary Judgment as to all Counts alleged in Plaintiff's Amended Complaint is granted.

Date: February 14, 2012

JOHN W. DARRAH
United States District Court Judge